SUBIA *v.* BOONE

ESTOPPEL—EQUITABLE ESTOPPEL—PROMISSORY NOTES—CONDUCT OF
    DEFENDANT.
    Where a maker of a series of promissory notes, prior to their
        assignment to plaintiff, acknowledged to plaintiff's attorney
        the balance owed upon the notes to the payee, and after the
        assignment signed a letter again admitting the amount of
        the indebtedness, such conduct would support conclusion that
        maker was equitably estopped from asserting defenses of
        usury, lack of consideration and forgery against plaintiff-
        assignee.

Appeal from Wayne, Weidman (Carl M.), J.
Submitted Division 1 June 11, 1968, at Detroit.
(Docket No. 2,965.)    Decided November 27, 1968.

Action by Anton Subia against Theodore S. Boone
to recover on a promissory note.    Judgment for
defendant.    Plaintiff appeals.    Reversed.

*Cassese & Batchelder,* for plaintiff.

PER CURIAM.    In 1957 defendant signed a series of
promissory notes for either $500 or $600 each with
Edward Krause as the payee.    Krause later in-
dorsed and delivered some of the notes to the plain-
tiff.    Some correspondence took place between the
plaintiff's attorney and defendant both before and
after the assignment of the notes.    By letter dated

REFERENCE FOR POINTS IN HEADNOTE
11 Am Jur 2d, Bills and Notes §§ 674, 682.

July 15, 1960, before the assignment to the plaintiff, defendant acknowledged the balance owed upon the notes. This was pursuant to an inquiry by plaintiff's attorney so as to be able to advise his client whether to accept the assignments. After the assignments, another letter was signed by the defendant which again admitted the amount of the indebtedness that was owed to Krause, and now to the plaintiff, Krause's assignee.

It is not clear from this record that the plaintiff was ever apprised of the present defenses defendant now asserts to plaintiff's suit. There is no question but that plaintiff, through his agent, both before and after assignment sought to confirm the indebtedness and the amount thereof through the series of letters to the defendant. Defendant admits signing the responsive letters involved acknowledging the indebtedness and the amount, but asserts that he did so only to protect his friend Krause who owed money to the plaintiff. Defendant's method of protection under his own testimony was to represent to the plaintiff that he in fact owed money upon the notes to Krause.*

---

* Defendant testified that he made payments to plaintiff to help Krause "maintain the friendly relationship that had existed over years between Mr. Krause and Mr. Subia." Defendant admitted execution of his letter to plaintiff's agent of July 15, 1960 (before the notes were assigned) and that he falsely agreed therein to the amount of indebtedness to Krause and promised he would make weekly payments of $50. Defendant explained the reason for the false letter as follows:

"Because Mr. Krause came to me and asked me to save him with Mr. Subia. He said 'Now, you are my friend and Subia is my friend, and I don't want to lose' the friendship of either. 'If you will do this, I will take care of you. No need to worry.' "

Further defendant signed the letter of January 17, 1961 again agreeing to an amount knowing that it was in error and he did so to protect his friend, Mr. Krause. According to his own testimony defendant continued paying after January 17, 1961, because he "was trying to save Mr. Krause who said he wanted to remain friendly with Mr. Subia and with me." Defendant even admitted swearing falsely in his answer to the complaint still for the purpose of protecting his friend Krause.

Suit, bottomed upon the assignment of the notes but based upon a theory of account stated by the letter of January 17, 1961, and upon the theory of estoppel as to the defendant, was met by the defendant with the asserted defenses of usury, lack of consideration and forgery.

After a trial filled with digressions and irrelevancies, the trial court found that

"there is no indebtedness due on the note sued upon; that there was no consideration for the same, and the facts showed that the notes in this matter were either forged or changed."

Accordingly a judgment was entered for the defendant.

It may be true that defendant did have defenses of usury, lack of consideration, and forgery as to his "friend", Krause, and that these defenses might have validity against an assignee depending upon whether the notes were negotiable or non-negotiable or whether plaintiff was aware of the defenses. But this is of no importance here where suit was brought, not upon the notes, but on the theory of an account stated and upon the additional theory of estoppel.

From the record and the trial judge's findings, it is absolutely clear that the trial court did not consider the doctrine of equitable estoppel which may prevent an obligor from setting up defenses as against an assignee. That such a theory has legal validity is indicated in respectable encyclopedic authority:

"The debtor, by his representations or conduct, may preclude himself from asserting against the assignee of a non-negotiable instrument, defenses which would otherwise have been available to the debtor against the assignor. For example, a debtor

may be estopped by representations or recitals in * * * a separate certificate or statement relating to the assigned instrument, * * * by express waiver, or by such conduct as inducing the assignee to take the assignment of the instrument by admitting the validity of the debt or declaring that he has no defense, * * * making payments to the assignee * * * . . However, where an assignee does not exercise good faith in the transaction, as where he has knowledge of a possible defense by the debtor against the assignor * * * he is precluded from asserting estoppel." 6 Am Jur 2d, Assignments § 103, p 285, 286.

Since equitable estoppel is a valid theory, how much an estoppel is created is well stated in 4 Corbin, Contracts, § 899, p 604–605;

"To create such an estoppel, the obligor must have so conducted himself as to induce the assignee to believe that the defense or counterclaim that is later asserted did not exist and to change his position materially in reasonable reliance thereon. Also, the obligor must have had reason to foresee some such change of position in reliance."

An examination of defendant's admitted conduct could well support a conclusion that the defendant is equitably estopped from asserting the defenses claimed. Therefore this Court must reverse and remand this case for a new trial wherein the theory of estoppel is recognized.

Reversed with costs to plaintiff.

T. G. KAVANAGH, P. J., and LEVIN and NEWBLATT, JJ., concurred.